UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
BLANCA MARTINEZ and JUAN CARLOS SIMONE,
individually, and on behalf of all others similarly situated,

Plaintiffs,

**CLASS AND
COLLECTIVE ACTION
COMPLAINT**

vs.

BARBERRY ROSE MANAGEMENT COMPANY,
INC. d/b/a HOWAL MANAGEMENT CORP., ARM
MAINT INC., STF 826 CROWN STREET
HOLDING LLC, LJJ MANAGER II LLC, LJJ
MANAGER LLC, BSF INWOOD HOLDING LLC,
LEWIS BARBANEL, and all related entities,

Defendants.

-------------------------------------------------------------X

  Representative Plaintiffs BLANCA MARTINEZ ("Martinez") and JUAN CARLOS

SIMONE ("Simone") (collectively, "Plaintiffs" or "Representative Plaintiffs") individually

and on behalf of all others similarly situated, as collective and class representatives, upon

personal knowledge as to themselves and upon information and belief as to other matters,

by their attorneys, RAPAPORT LAW FIRM, PLLC, and MILLER LAW FIRM, PLLC, as

and for their Complaint against BARBERRY ROSE MANAGEMENT COMPANY, INC.

d/b/a HOWAL MANAGEMENT CORP., ARM MAINT INC., STF 826 CROWN

STREET HOLDING LLC, LJJ MANAGER II LLC, LJJ MANAGER LLC, BSF

INWOOD HOLDING LLC, LEWIS BARBANEL, and all related entities (collectively,

"Defendants"), allege:

<u>**PRELIMINARY STATEMENT**</u>

**The Nature of Plaintiffs' Claims:**

  1.  This action is brought pursuant to the New York Labor Law ("NYLL")

Article 19 § 663, 12 New York Codes, Rules and Regulations ("NYCRR"), Part 141 and

NYLL Article 6 § 190 *et seq.*, the Fair Labor Standards Act ("FLSA"), and 29 U.S.C. § 207, to recover unpaid overtime wages, minimum wages, and other wages owed to Plaintiffs and similarly situated co-workers – superintendents, porters and other building maintenance workers – who have worked at apartment buildings owned, controlled and/or operated by Defendants in New York City.

2.      This is a class/collective action, seeking unpaid wages, including minimum wage and unpaid overtime compensation and interest thereon, reimbursement for unlawful deductions, liquidated damages and other penalties, injunctive and other equitable relief and reasonable attorneys' fees and costs, under, *inter alia*, the Fair Labor Standards Act ("FLSA") §§ 6 and 7, 29 U.S.C. §§ 206 and 207.

3.      This action further invokes diversity jurisdiction and the supplemental jurisdiction of this Court to consider claims arising under New York Labor Law ("NYLL") (*e.g.*, New York Wage Payment Act; NY Labor Law §§ 191, 193, and 195; 12 N.Y.C.R.R. Part 141-1.9 and 2.10, and Part 142; and NY Labor Law § 215).

**The Barberry Enterprise:**

4.      At all relevant times, Defendants were and still are a centrally managed real estate enterprise (hereinafter the "Barberry Enterprise") that owns, controls, and manages apartment buildings (the "Barberry Buildings") in New York City, and upon information and belief, during the relevant time periods, the Barberry Enterprise has employed more than fifty (50) superintendents, porters and handymen.

5.      This Collective and Class Action seeks redress for state and federal wage violations that Defendants, as joint employers, inflicted on superintendents, porters and other maintenance personnel who worked at the Barberry Buildings during the applicable FLSA and NYLL statute of limitations periods.

6. During the time period relevant to the Plaintiffs' and Class and Collective Members' causes of action, the Barberry Enterprise was controlled by individual defendant Lewis Barbanel ("Barbanel"), who had the status of joint employer of superintendents, porters, handymen and other maintenance personnel who worked at the Barberry Buildings during the applicable FLSA and NYLL statute of limitations periods.

7. Barbanel exercised unified ownership and control over approximately forty-six (46) apartment buildings in New York City through his various management companies (the "Management Entities"), title-holding entities (the "Title-Holding Entities") and investment entities ("Investment Entities"), each of which had Barbanel as its principal, managing member, manager and/or most senior officer.

8. At all relevant times, the Barberry Enterprise had a principal place of business at 1024 Broadway, Woodmere, New York 11598, from which it owned, operated and managed the Barberry Buildings under the same policies regarding the payment of wages to building maintenance employees.

9. Upon information and belief, the Barberry Enterprise issues earnings statements to all of the superintendents and porters at the Buildings, regardless of the particular building where they are assigned to work, under the name "Arm Maint Inc" and identifies 1024 Broadway, Woodmere, New York 11598 as its address.

10. Title to each of the Barberry Buildings is nominally vested in the Title-Holding Entities, each of which is wholly owned and controlled by the Barberry Enterprise, and each having Barbanel as its agent as a principal and/or authorized signatory.

11. The Barberry Enterprise has applied common employment practices, policies and procedures to superintendents, porters and maintenance workers of the Barberry Buildings, including, *inter alia*, the Barberry Enterprise's practice of willfully

refusing to compensate these employees for all hours worked beyond the first forty (40) hours of work per work week.

12.     The Barberry Enterprise carried out its common employment practices, policies and procedures by, *inter alia*, issuing directives that were communicated by property managers, each of whom was responsible for overseeing various buildings and superintendents, porters and other maintenance workers.

13.     Building superintendents were required to remain on call at their respective buildings from early morning through late at night, where they performed snow removal, provided building access to emergency responders and tenants who misplaced keys, addressed leaks, handled tenant requests, and performed other tasks.  Regardless of the time of day or night and/or day of the week when such work was needed, superintendents were largely paid fixed weekly and/or monthly sums, and they were not paid overtime compensation despite working substantially more than 40 hours per workweek in violation of the FLSA.

14.     Furthermore, the Barberry Enterprise had a policy and practice of requiring unlawful deductions from wages, including the Barberry Enterprise's requirement that superintendents pay for tools used solely for the benefit of the Defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor for the building service industry.  12 N.Y.C.R.R. § 141-1.9.

15.     The Barberry Enterprise also had a common practice of issuing pay statements to workers that did not comply with the New York Labor Law, including, among other omissions, failing to set forth hours worked and/or identifying the manner in which employees' weekly pay was calculated.

## JURISDICTION AND VENUE

16.     Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1137 because this case arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. The Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. §1367.

17.     Venue is appropriate in this district pursuant to 28 U.S.C. §1391 because Defendants transact business and have agents in the Eastern District, and this is the judicial district in which the events giving rise to the claims occurred, Representative Plaintiffs having performed work for Defendants in Brooklyn. Defendants have facilities and employed Plaintiffs and putative Collective and Class Members in this district.

18.     This Court has personal jurisdiction over the Defendants pursuant to New York Civil Practice Law and Rules § 301 in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiffs within the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the laws of the State of New York, and accordingly may be served with process pursuant to Fed. R. Civ. P. 4(h)(1).

## THE PARTIES

**Plaintiffs**

**Blanca Martinez:**

19.     Martinez is an adult, natural person who resides in the City of New York, County of Kings and State of New York.

20.     Beginning in or about 2002 until November 1, 2019, Martinez was a Porter/Maintenance Worker at 826 Crown Street, Brooklyn, New York (the "Building"). Throughout this entire period, Martinez worked as a part of a two-person maintenance team

at the Building that consisted of Martinez and co-plaintiff Simone.  Martinez and Simone have long resided together in the Building's basement.

21.     The Building is a six-floor rental apartment building with 47 apartments, plus a basement living area where Plaintiffs reside.

22.     On or about June 22, 2018, Martinez became the Defendants' employee as a result of the Defendants' acquisition of the Building.

23.     In certain documents, Defendants referred to Martinez as "Superintendent."

24.     Upon Defendants' acquisition of the Building, Martinez continued to perform the duties that she had performed at the Building during the prior sixteen years, which included, *inter alia*: taking out and sorting garbage and recyclables; sweeping and mopping; cleaning the exterior areas in the back and front of the Building, including the Building's garden; and assisting Simone with various maintenance tasks, such as assisting with painting.

25.     Defendants failed to pay Martinez *any* wages or other monetary sums.

26.     Although Defendants issued paychecks that were made payable to Martinez, these checks were earmarked and intended solely for the work of Simone, who was superintendent of the Building and who had primary responsibility for its maintenance.

27.     Martinez' duties primarily involved cleaning the Building, as well as assisting Simone with projects that were particularly labor-intensive.

28.     Solely by way of example, on or about October 1 and October 4, 2019, Martinez assisted Simone with a project in Apartment F5 in the Building that involved the removal of a wall, plastering and painting.  On both of these days, Martinez assisted with this project by, among other tasks, removing debris and painting corners and edges. Martinez received no pay whatsoever for this work.

29.     On two occasions, when tenants vacated apartments in the Building, Martinez assisted with the apartment-turnover work, which involved, among other tasks: assisting with painting by handling the painting of corners and edges; removing garbage; cleaning bathrooms, kitchens, and appliances; and handling communications with the Barberry Enterprise's managers regarding this work.  Martinez received no compensation for this work.

30.     In addition, because of her English-language proficiency, on a day-to-day basis, Defendants' property manager would convey to Martinez for Simone to complete, and it was Martinez' responsibility to receive and respond to these communications.

31.     Insofar as Defendants paid no wages to Martinez, Defendants egregiously violated state and federal minimum wage requirements.

32.     Throughout the period of Defendants' ownership and control of the Building, Martinez worked approximately 30 hours per week.

**Simone:**

33.     Simone is an adult, natural person who resides in the City of New York, County of Kings and State of New York.

34.     Beginning in or about 1997 until November 1, 2019, Simone worked at the Building as its Superintendent, and he also performed duties that were beyond superintendent responsibilities, such as: (a) renovating bathrooms and kitchens; (b) electrical and plumbing work; and (c) installing new flooring.

35.     On or about June 22, 2018, Simone became Defendants' employee as a result of Defendants' acquisition of the Building.  Upon Defendants' acquisition of the Building, Simone continued to perform the duties that he had performed since he began working at the Building in 1997.

**Individual Defendant, Lewis Barbanel:**

36.     Barbanel is an adult, natural person who, upon information and belief, resides in Nassau County, New York.

37.     Upon information and belief, Barbanel maintains a principal place of business at 1024 Broadway, Woodmere, New York 11598.

38.     Upon information and belief, at all relevant times, Barbanel was (and he continues to be) the most senior executive of the Title-Holding Entities, Investment Entities and the Management Entities that comprise the Barberry Enterprise, through which the Barberry Enterprise invests in, owns and controls the Barberry Buildings.

39.     During the time periods relevant to this Complaint, Barbanel was the managing member or senior executive of the Title-Holding Entities and Management Entities, which exist to nominally hold title to and manage the Barberry Buildings but, in fact, are under Barbanel's total control.

40.     Upon information and belief, Barbanel is liable for the wages of Plaintiffs and those similarly situated under New York Business Corporation Law § 630 and New York Limited Liability Company Law § 609(c).

41.     Upon information and belief, Barbanel has managerial and operational control over the Barberry Enterprise's financial affairs and personnel policies, including, but not limited to, matters and policies pertaining to compensation of the Barberry Enterprise's employees and overtime policies.

42.     Upon information and belief, Barbanel is the president of Barberry Rose Management Co., Inc. ("BRMC").

43.     Barbanel possessed and exercised operational control over the Barberry Enterprise.

44.     On the public profile that Barbanel maintains on Linkedin.com, Barbanel describes himself as follows: "Lewis Barbanel is the president of Barberry Rose Management, a business founded in 1965 by his father Herbert Barbanel. Lewis focuses on the acquisition and growth of both residential apartment houses and commercial properties; specifically, he specializes in Rent Regulated buildings in New York City." https://www.linkedin.com/in/lewis-barbanel-599b3940 (accessed on November 30, 2019 at 2:54 p.m.).

45.     On his public Linkedin.com profile, Barbanel further states the following about himself: "He oversees the BRM portfolio of buildings, which encompasses properties including 5-story walk up apartment houses, large elevator buildings, office buildings and commercial properties." https://www.linkedin.com/in/lewis-barbanel-599b3940  (accessed on November 30, 2019 at 2:56 p.m.).

46.     Barbanel determined the terms of employment wages and compensation of Plaintiffs, established their duties and schedules, and had ultimate decision-making authority for the hiring and firing of employees.

**BRMC:**

47.     BRMC identifies itself on its letterhead and other correspondence as "BARBERRY ROSE MANAGEMENT COMPANY INC. dba HOWAL MANAGEMENT CORP."

48.     Upon information and belief, BRMC's use of the name "Howal Management Corp." is unauthorized in that there is no corporation that is currently authorized to conduct business in New York named "Howal Management Corp."

49.     Upon information and belief, BRMC is a corporation organized and existing under the laws of the State of New York.

50.    Upon information and belief, BRMC maintains its principal place of business at 1024 Broadway, Woodmere, New York 11598.

**Arm Maint Inc.**

51.    Upon information and belief, Arm Maint Inc. (hereinafter "AMI") is a corporation organized and existing under the laws of the State of New York.

52.    Upon information and belief, AMI maintains its principal place of business at 1024 Broadway, Woodmere, New York 11598.

53.    Upon information and belief, AMI is owned and controlled by Barbanel, and it is part of the Barberry Enterprise, with its primary function to serve as issuer of paychecks to maintenance personnel.

54.    Upon information and belief, AMI and BRMC operate as cogs in the same residential real estate enterprise that is under the ultimate control of Barbanel, and they exist solely to further the business interests of this unified business enterprise.

55.    Upon information and belief, AMI was (and it continues to be) completely dominated by Barbanel and BRMC and, for all practical purposes, AMI existed solely to advance the interests of Barbanel, BRMC and the Barberry Enterprise.

56.    Upon information and belief, AMI and BRMC operated from the identical office space and telephone number; and funds were readily transferred between AMI, BRMC and the Title-Holding Entities, each of which existed for the singular function of generating profits from the Buildings for Barbanel.

**STF 826 Crown Street Holding LLC:**

57.    Upon information and belief, STF 826 Crown Street Holding LLC (hereinafter "STF") is a corporation organized and existing under the laws of the State of New York.

58. Upon information and belief, STF maintains its principal place of business at 1024 Broadway, Woodmere, New York 11598.

59. Upon information and belief, STF is owned and controlled by Barbanel, and it is part of the Barberry Enterprise, and it is the title-owner of the Building.

60. Barbanel, BRMC, AMI and STF, as well as all other entities holding title to the Barberry Buildings, all operated as a centrally-managed real estate enterprise, under common direction and control. With respect to personnel and employment policies, the Barberry Enterprise would carry out its practices and policies through its managerial personnel, including property managers, each of whom exercised direct oversight over the Barberry Enterprise's superintendents, porters and other maintenance personnel who worked at the Barberry Buildings.

61. The intertwined operations and unified ownership of the entities established by Barbanel to nominally hold title to the Barberry Buildings and serve as management agents is vividly demonstrated by Schedule A hereto, which sets forth the names and addresses of each Barberry Enterprise entity holding title to and serving as managing agent for the Barberry Buildings that are currently known to Plaintiffs through publicly-filed records.

62. As shown by Schedule A, public records show that: (a) BRMC was the managing agent for all of the Buildings, except for a single building, whose managing agent identifies its address as "c/o Barberry Rose Management Company"; (b) Barbanel is the managing member of every title holding entity; and (c) the Title-Holding Entities share the same address as Barberry Rose.

**LJJ MANAGER II LLC:**

63. Upon information and belief, LJJ MANAGER II LLC (hereinafter "LJJMII") is a corporation organized and existing under the laws of the State of New York.

64.     Upon information and belief, LJJMII maintains its principal place of business at 1024 Broadway, Woodmere, New York 11598.

65.     Upon information and belief, LJJMII is owned and controlled by Barbanel, who is its managing member, and LJJMII is part of (and it is completely controlled and dominated by) the Barberry Enterprise, and it functions as one of the Barberry Enterprise's Investment Entities.

66.     In mortgage documents and other documents relating to the Barberry Buildings that Defendants filed with the New York City Department of Finance, Defendants characterized LJJMII as the "Manager" of several of the Title-Holding Entities, including, solely by way of example, STF 826 Crown Street Holding LLC, which is the entity that holds title to the Building (826 Crown Street, New York, NY) where Plaintiffs performed work.

67.     Upon information and belief, LJJMII was completely dominated by Barbanel and BRMC and, for all practical purposes, LJJMII existed solely to advance the interests of Barbanel, BRMC and the Barberry Enterprise.

**LJJ MANAGER LLC:**

68.     Upon information and belief, LJJ MANAGER LLC (hereinafter "LJJM") is a corporation organized and existing under the laws of the State of New York.

69.     Upon information and belief, LJJM maintains its principal place of business at 1024 Broadway, Woodmere, New York 11598.

70.     Upon information and belief, LJJM is owned and controlled by Barbanel, who is its managing member, and LJJM is part of (and it is completely controlled and dominated by) the Barberry Enterprise, and it functions as one of the Barberry Enterprise's Investment Entities.

71.     In mortgage documents and other documents relating to the Buildings that Defendants filed with the New York City Department of Finance, Defendants characterized LJJM as the "Manager" of at least ten of the Title-Holding Entities, including, solely by way of example, 38 Post Avenue, New York, NY and 121 Sherman Avenue, New York, NY.

72.     Upon information and belief, LJJM was completely dominated by Barbanel and BRMC, and LJJM existed solely to advance the financial interests of Barbanel, BRMC and the Barberry Enterprise.

**BSF INWOOD HOLDING LLC:**

73.     Upon information and belief, BSF INWOOD HOLDING LLC ("BSFIH") maintains its principal place of business at c/o Barberry Rose Management Company, Inc., 1024 Broadway, Woodmere, New York 11598.

74.     Upon information and belief, BSFIH is owned and controlled by Barbanel, who is its managing member, and BSFIH is part of (and it is completely controlled and dominated by) the Barberry Enterprise.

75.     Upon information and belief, in a single transaction that was consummated on or about December 14, 2016, the Barberry Enterprise acquired a portfolio of thirteen (13) apartment buildings.  On October 14, 2016 (two months before this transaction), the Barberry Enterprise created BSFIH serve as the title-holding entity for all of these thirteen newly-acquired buildings.

76.     The foregoing December 14, 2016 transaction exemplifies the extent to which the Barberry Enterprise's constituent Title-Holding Entities and Management Entities do not function independently, and are, instead, part of a unified and centrally controlled business enterprise.

13

77.     Upon information and belief, BSFIH was completely dominated by Barbanel and BRMC and, for all practical purposes, BSFIH existed solely to advance the interests of Barbanel, BRMC and the Barberry Enterprise.

## CLASS ACTION ALLEGATIONS

78.     Plaintiffs bring this action individually and as a collective and class action on behalf of all persons similarly situated and proximately damaged by Defendants' conduct, including, but not necessarily limited to, the following Plaintiff Collective and Class:

*FLSA Collective:*

79.     The FLSA Collective refers to all persons who are, or have been, employed as superintendents and maintenance workers at the Barberry Buildings (the "FLSA Collective Plaintiffs") from three (3) years prior to this action's filing through the date of the final disposition who elect to opt-in to this action.

80.     This action claims that Defendants violated the wage and hour provisions of FLSA by depriving Plaintiffs, as well as others similarly situated to Plaintiffs, of their lawful wages.  Upon information and belief, there are many similarly situated current and former superintendents and maintenance workers of Defendants who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join this lawsuit.

81.     At all relevant times, Defendants are aware and have been aware of the requirements to pay Plaintiffs and FLSA Collective Plaintiffs: (a) federal minimum wage; and (b) one and one-half times their regular rates of pay for all hours worked each workweek above forty.  However, Defendants purposely chose not to do so.

82.     Defendants failed to pay Simone and FLSA Collective Plaintiffs for hours worked per workweek above forty in violation of the FLSA.

83.    Defendants failed to pay Martinez and FLSA Collective Plaintiffs minimum wages for all hours worked.

84.    The FLSA Collective Plaintiffs are readily ascertainable, such information being in the possession and control of Defendants.

85.    Plaintiffs and all similarly situated employees who elect to participate in this action seek unpaid minimum wage compensation (Martinez), unpaid overtime (Simone), an equal amount of liquidated damages and/or prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

### *The New York Class – Rule 23 Class Allegations:*

86.    The New York Class refers to all persons who are, or have been, employed as Superintendents, Porters and maintenance workers at the Barberry Buildings on or after the date that is six years before the filing of the Complaint in this case and the date of final judgment in this matter as defined herein.

87.    The Rule 23 Class Members ("New York Class") are readily ascertainable. The number and identity of the Rule 23 Class Members are determinable from the records of Defendants.  The positions held, and nature and extent of certain unlawful deductions from wages are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants, as well as from publicly-filed records showing the addresses of the Barberry Buildings where the putative members of the New York Class are employed.   Notice can be provided by means permissible under Fed. R. Civ. P. 23.

88.    The Defendants, their officers, and directors are excluded from the Classes, as well as all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

89.     This action has been brought and may properly be maintained as a class/collective action under Fed.R.Civ.P. Rule 23 and 29 U.S.C. §216 because there is a well-defined community of interest in the litigation and the proposed Classes are easily ascertainable.

(a) <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the classes are so numerous that joinder of all members is impractical, if not impossible.   Membership in the Plaintiff Classes will be determined upon analysis of employee and payroll records, among other records maintained by Defendants.

(b) <u>Commonality</u>: The Representative Plaintiffs and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, thereby making a class action superior to other available methods for the fair and efficient adjudication of the controversy.  Consequently, class certification is proper under Fed.R.Civ.P. Rule 23(b)(3) and 29 U.S.C. §216(b).   For example, the Barberry Enterprise's practice and policy of failing to comply with New York Labor Law requirements pertaining to wage notices and pay statements, as alleged above, applies to all members of the New York Class, and the relief demanded (including, *inter alia*, the demand for injunctive and declaratory relief) affects the entire class.  Similarly, the Barberry Enterprise's policy and practice of unlawful deductions is applicable class-wide and involves common legal and factual issues.

(c) <u>Typicality</u>: The Representative Plaintiffs' claims are typical of the claims of the Plaintiff Classes.  The Representative Plaintiffs and all members of the Plaintiff Classes sustained injuries and damages arising out of and caused by Defendants'

common course of conduct in violation of state and federal law, as alleged herein. All of the Rule 23 Class Members were subject to the same corporate practices of Defendants of failing to pay minimum wage and overtime compensation; unlawful wage deductions; violations of NYLL §195(3) by failing to issue wage statements to employees in the primary language of employees that correctly identified the name of the employer, address of employer, rates of pay or basis thereof, regular hourly rate, number of overtime hours worked; and violations of NYLL §195(1) by failing to provide to employees, upon hiring, a written notice in English and the employee's primary language setting forth the employee's rates of pay and basis thereof, the name of the employer, physical address of the employer's business, names used by the employer, and other legally-mandated disclosures.

(d) <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes, or may make it, impractical for Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would create a risk of inconsistent rulings, which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests. This risk is particularly applicable here, in light of the demand herein for declaratory and injunctive relief relating to NYLL § 195(1) and (3). Moreover, the Representative Plaintiffs are informed and believe, and based thereon allege, that Defendants, have acted and refused to act on grounds generally applicable to all

17

claims, thereby making appropriate injunctive and monetary relief for all members of each class.  Consequently, Class certification is proper under Fed.R.Civ.P. Rule 23(b)(2) and 29 U.S.C. § 216(b).

(e) <u>Adequacy of Representation</u>: The Representative Plaintiffs in this class action are adequate representatives of the Plaintiff Classes, in that the Representative Plaintiffs' claims are typical of those of the Plaintiff Classes and the Representative Plaintiffs have the same interests in the litigation of this case as the Class Members.  The Representative Plaintiffs are committed to vigorous prosecution of this case, and have retained competent counsel, experienced in employment litigation of this nature, who have demonstrated diligence in investigating the facts relevant to the claims of the Representative Plaintiffs and putative Class Members.  The Representative Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to the Class as a whole.

90.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct retaliation or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment and future efforts to secure employment.  Class actions provide Rule 23 Class Members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while reducing these risks.

<u>**COMMON FACTUAL ALLEGATIONS**</u>

91.     As described herein, Defendants have, for years, knowingly failed to adequately compensate those employees within the class definitions identified above for wages, including overtime wages due, under the FLSA (29 U.S.C. §§ 206 and 207) and

NYLL (Article 19), and unlawfully deducted sums from wages in violation of the New York Wage Payment Act, Labor Law § 190, et seq., the New York Labor Law § 650, et seq., and New York Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.  Among other means, Defendants engaged in unlawful business practices by requiring employees to work numerous hours of overtime on a weekly basis without overtime compensation and/or failing to pay minimum wages.

92.     In addition, Defendants took unlawful deductions from Simone's wages, by requiring him to pay the cost of tools and supplies.

93.     Upon information and belief, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

94.     At all relevant times, Defendants employed and/or continue to employ Representative Plaintiffs and each of the FLSA Collective members within the meaning of the FLSA.

95.     At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each of the New York Class members within the meaning of the NYLL, §§ 2 and 651.

96.     Defendants employ employees at their places of business in the activities of an enterprise engaged in commerce, including employees handling, selling or otherwise working on goods or materials that have been moved or produced for commerce.  The enterprise has an annual gross volume of sales made or business done in an amount not less than $500,000.  Therefore, the employees are employed in an enterprise engaged in commerce within the meaning of section (3)(s)(1)(A) of the FLSA.

97.     At all relevant times, the Barberry Enterprise and its constituent entities, were and continue to be an "enterprise engaged in commerce" within the meaning of the

FLSA, operating a group of more than forty-six (46) apartment buildings that are nominally titled in different corporate names but which are centrally owned and controlled by Defendants.

*Defendants Constitute Joint Employers*

98.  Defendants, collectively as the Barberry Enterprise, had the power to hire and fire Representative Plaintiffs and putative Collective and Class Members, supervised and controlled Representative Plaintiffs' and putative Collective and Class Members' work schedules and conditions of employment, determined the rate and method of paying Representative Plaintiffs and putative Class Members and maintained Representative Plaintiffs' and putative Class Members' employment records.

99.  The Representative Plaintiffs are informed and believe that at all relevant times, the constituent individuals and entities of the Barberry Enterprise functioned as a unified enterprise, namely:

(a)  Ultimate control of Barberry Buildings is exercised by Barbanel;

(b)  Though the Barberry Buildings are titled in different corporate names through Title-Holding Entities established by Barbanel solely for the purpose of holding title on the Barberry Enterprise's behalf, Barbanel has substantial ownership interests in the entities that nominally hold title to the Barberry Buildings;

(c)  Buildings of the Barberry Enterprise are centrally managed;

(d)  As shown by Barbanel's public Linkedin.com profile, the Barberry Enterprise has publicized its status as a family-operated real estate business that focuses primarily on multiple family apartment buildings; and

(e)  The Barberry Enterprise issues uniform personnel policies and directives to its maintenance personnel, either through its field managers or other managerial personnel.   For example, the Barberry Enterprise circulated a list, entitled "BUILDING SUPER RESPONSIBILITIES," that sets forth a uniform set of job responsibilities of superintendents at the Buildings, including the requirement that superintendents provide "24-hour attendance of building."   A copy of the foregoing list is annexed hereto as Exhibit 1.

100.  Through their integrated ownership and management structure, Barbanel had (and he continues to have) an economic interest in the Barberry Buildings.

101.    Defendants each had either functional and/or formal control over terms and conditions of work and over the policies and practices with respect to the employment and compensation of the Plaintiffs.

102.    Defendants employed Plaintiffs within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

103.    Upon information and belief, the corporate Defendants are either alter egos of each other, and/or the corporate Defendants failed to operate as entities legally separate and apart from themselves by, among other things:

(a) Failing to adhere to the corporate formalities necessary to operate corporate Defendants as corporations;

(b) Defectively forming or maintaining corporations by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

(c) Operating corporate Defendants for their own benefit and maintaining control over these corporations as close corporations, all as part of the same residential real estate enterprise that ultimately benefitted Barbanel.

(d) Intermingling assets and debts of their own with corporate Defendants and diminishing and/or transferring assets to avoid full liability as necessary to protect their own interests; and

(e) Other actions evidencing a failure to adhere to the corporate form.

104.    Upon information and belief, Defendants run the business of all of the Barberry Enterprise as one operation, and Defendants' operations were interrelated and united.

105.    Consistent with their policies and patterns or practices, Defendants harmed Plaintiffs individually, as set forth below.

106.    Simone was required, as a condition of his employment, to remain on-call, and his workweek substantially exceeded forty (40) hours.

107.    Defendants required cleaning and monitoring of the Building seven days per week.  Defendants distributed a written notice with the heading "BUILDING SUPER

RESPONSIBILITIES" which stated, *inter alia,* that superintendents were responsible for: "Daily inspection and cleaning of lobby, stairways, sidewalk, basement, elevators, garbage removal including recycling"; and "24-hour attendance of the building (to be available to close water in emergency and call for emergency service, if needed.)".

108.    Simone was repeatedly and pervasively paid substandard wages insofar as he was: (a) denied full pay for all hours worked; and (b) he was never paid for the extensive overtime hours that he worked each week. Instead, he was paid a flat sum every week, regardless of the number of hours that he worked, except for modest amounts that Defendants would pay for certain projects, such as plumbing repairs.

109.    Simone also handled: maintaining the building's appearance, cleaning, mopping, plastering, cleaning the boiler, accepting oil deliveries, communicating with tenants, delivering monthly rent invoices to tenants; sweeping the sidewalk, showing vacant apartments, cleaning and removing discarded items from newly-vacated apartments, fixing bathroom and kitchen faucets, fixing and replacing locks, painting ceilings, unclogging toilets, and shoveling snow.

110.    Simone was required to be on call, 24 hours per day, seven days a week, including on holidays, to address emergent issues.

111.    Throughout his employment, Simone worked far more than forty (40) hours per week. During periods of severe winter weather, his workweek would be substantially more than this.

112.    On most weekdays, Simone began his workday at 6:00 a.m., when he would clean the sidewalk and common areas.   On Mondays, Wednesdays and Fridays, when garbage had to be brought to the street, and no emergencies occurred, Simone worked until 5:00 p.m., sometimes later, without any defined, uninterrupted scheduled period for lunch. On Tuesdays and Thursdays, Simone usually worked until 4:00 p.m.

113.    On Saturdays and Sundays, on average, Simone worked three hours per day.

114.    Based on the foregoing, Simone's regular hourly duties entailed, at a minimum, 59 hours per week.

115.    But the foregoing only involved regular duties.  Most weeks, repairs and unplanned, emergency circumstances (including, solely by way of example: leaks; electrical issues; emergency responders requiring access; helping tenants who were locked out of their apartments; shoveling snow; curing conditions that led to violations issued by New York City agencies) involved at least 12 or more hours of additional work above and beyond Simone's regular hours described above.

116.    In addition, pursuant to the Defendants' specific instructions, Simone was required to be on-call 24-hours per day.

117.    Simone was subjected to unlawful wage deductions, including being required to pay for work-related expenses out of his own wages without reimbursement. These tools that Simone provided, for which he was never reimbursed, included, inter alia: circular saw; toilet auger/snake; table saw; ceramic tile cutter; and leaf blower.

118.    Defendants compensated Simone with a flat sum ($500 per week), except for intermittent, irregular and modest additional sums.

119.    The flat sum of $500 per week covered only Simone's first forty hours of work per week, without compensation for overtime hours.

120.    Although Defendants provided Simone daily time sheets, these documents were ignored for purposes of payroll, and they existed solely for Defendants to maintain the pretense of complying with wage and hour laws.

121.    Defendants failed to provide Simone with proper wage statements that accurately reflected the amount of hours that he worked each week.

122.    The flat sums that Defendants paid to Simone were intended to cover only the first forty hours worked per week.

**AS AND FOR A FIRST CAUSE OF ACTION**
**FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.***
**(On Behalf of Simone and the FLSA Collective)**

123.    Plaintiffs incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

124.    At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d).  Defendants employed members of the FLSA Class as superintendents, employment positions which engaged the employees in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1).  At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

125.    Representative Plaintiffs are informed and believe, and thereon allege, that Defendants have required, or require, the FLSA Class Members as part of their employment to work without additional compensation, such as overtime, in excess of the forty hours per week maximum under 29 U.S.C. § 207(a)(1).  That Section provides the following:

> Except as otherwise provided in this section, no employer shall employ any of his employees...for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate which is not less than one and one-half times the regular rate at which he is employed.

126.    Indeed, in the performance of their duties for Defendants, members of the FLSA Class routinely worked over substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services they provided to Defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207.  The precise number of unpaid overtime hours will be proven at trial.

127.    Simone proposes to undertake appropriate proceedings to have such FLSA Class Members aggrieved by Defendants' unlawful conduct notified of the pendency of this action and join this action as Plaintiffs, pursuant to 29 U.S.C. § 216(b), by filing written consents to joinder with the Court.

128.    Defendants' overtime violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

129.    Defendants have a policy and practice of refusing to pay overtime compensation to Simone and other superintendents.

130.    As a result of the foregoing, Simone seeks judgment against Defendants on his own behalf, and on behalf of those FLSA Class Members similarly situated who file written consents to joinder in this action, for all unpaid wages, including minimum wage and overtime wages owed by Defendants to Simone and the FLSA Class, pursuant to 29 U.S.C. §§ 206 and 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

### AS AND FOR A SECOND  CAUSE OF ACTION
**FLSA Minimum Wage Violations**
**(On Behalf of Martinez, Individually, as well as the FLSA Collective)**

131.    Martinez repeats and realleges all paragraphs above as though fully set forth herein.

132.    At all times relevant to this action, Defendants were Martinez' employers and employers of the putative FLSA class members within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

133.    At all times relevant to this action, Defendants were engaged in commerce or in an industry and/or activities affecting commerce.

134.    Defendants failed to pay Martinez and the putative FLSA collective members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

135.    Defendants' failure to pay Martinez and the putative FLSA collective members at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

136.    As a result of the foregoing, Martinez seeks judgment against Defendants on her own behalf, and on behalf of those FLSA Class Members similarly situated who file written consents to joinder in this action for unpaid minimum wages owed by Defendants to Simone and the FLSA Collective, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees.

**AS AND FOR A THIRD CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**
**(On Behalf of Simone and the New York Class – FRCP Rule 23)**

137.    Simone repeats and realleges each and every allegations contained in the foregoing paragraphs, with the same force and effect, as if fully alleged herein.

138.    Defendants employed Simone and other superintendents at the Barberry Buildings for workweeks longer than forty (40) hours and willfully failed to compensate them for the time worked in excess of forty (40) hours per week, at a rate of less than one and one-half (1 and ½) times the regular hourly rate, in violation of the requirements of the NYLL.

139.    By the course of conduct set forth above, Defendants have violated N.Y. Lab. Law § 650, et seq.; 12 N.Y.C.R.R. § 142-2.2.

140.    Defendants have a policy and practice of refusing to pay overtime compensation to Superintendents and other building maintenance personnel.

141.    As a consequence of the willful underpayment of wages, alleged above, Simone and members of the New York Class have incurred damages thereby and the

Defendants are indebted to them in the amount of unpaid overtime compensation and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper, including but not limited to liquidated damages, interest and attorneys' fees.

142.    Simone seeks recover of liquidated damages, attorneys' fees and costs to be paid by Defendants as provided by the NYLL.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**Violations of the New York Minimum Wage Act**
**(On Behalf of Martinez and the New York Class)**

143.    Martinez repeats and realleges all paragraphs above as though fully set forth herein.

144.    At all relevant times hereto, Defendants have been the employers of Martinez and similarly-situated New York Class Members within the meaning of the NYLL §§ 2 and 651.

145.    Defendants knowingly and willfully paid Martinez and similarly-situated class members less than the minimum wage in violation of NYLL § 652 and the supporting regulations of the New York State Department of Labor.

146.    Defendants failure to pay Martinez and the New York Class the minimum wage has been willful within the meaning of the NYLL § 663.

147.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Martinez has sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION
### Illegal Deductions, New York Labor Law, Article 19 § 193
### 12 N.Y.C.R.R. § 2.10(a)
### (On Behalf of Simone and the New York Class)

148.     Simone incorporates each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

149.     In violation of the New York Labor Law, Article 19, § 193, Defendants unlawfully deducted wages from Simone and the New York Class by requiring Simone and other Superintendents and maintenance workers to spend their own money on work-related expenses, including tools of the trade to complete mandated work. This further reduced Simone's wages below the amounts required by the NYLL and FLSA.

150.     As a result of the foregoing, Simone seeks judgment against Defendants on his own behalf, and on behalf of New York Class Members, for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

### AS AND FOR A SIXTH CAUSE OF ACTION
### Declaratory Judgment
### (FLSA Class and New York Class)

151.     Plaintiffs, for themselves and on behalf of the FLSA Class and New York Class, repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

152.     This action provides a ripe and justiciable case or controversy.

153.     It is just and equitable that the Court declares the rights and other legal relationships of the parties.

154.     Representative Plaintiffs, the FLSA Class and New York Class are entitled a declaration that Defendants' acts are in violation of the FLSA and NYLL.

## AS AND FOR A SEVENTH CAUSE OF ACTION
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements**
**(New York Class)**

155.    Representative Plaintiffs, on behalf of themselves and the New York Class members, repeat and re-allege and incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

156.    The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

157.    Throughout the Representative Plaintiffs' employment with Defendants, Defendants willfully failed to provide them and the New York Class with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3).

158.    Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class are entitled to recover from Defendants per employee liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

## AS AND FOR AN EIGHTH CAUSE OF ACTION
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Notices**
**(New York Class)**

159.    Representative Plaintiffs, for themselves and on behalf of the FLSA Class and New York Class, repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

29

160.    Defendants failed to provide Plaintiffs with a written notice, in English and Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL 195 §(1).

161.    As a result of Defendants' failure to provide wage statements, Plaintiffs and members of the New York Class are entitled to collect from Defendants $250 per workday that Defendants' violation continues, up to $5,000.00, together with reasonable attorneys' fees, and costs of disbursements of the action, pursuant to the NYLL § 198(1-b).

## RELIEF SOUGHT

**WHEREFORE,** the Representative Plaintiffs, Blanca Martinez and Juan Carlos Simone, on behalf of themselves and the FLSA Collective and the New York Class, respectfully request that the Court grant the following relief:

1.    Designation of this action as a collective action on behalf of the FLSA Class members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 28 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the FLSA Collective Members;

2.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the New York Class members and appointing Plaintiffs and their counsel to represent the class;

3.    An order tolling the statute of limitations;

4.    That the Court declare, adjudge and decree that Defendants violated the minimum wage provisions of the FLSA as to the Representative Plaintiff Martinez and the FLSA Collective;

5.      That the Court declare, adjudge and decree that Defendants violated the minimum wage provisions of the NYLL as to the Representative Plaintiff Martinez and the New York Class;

6.      That the Court declare, adjudge and decree that Defendants violated the overtime wage provisions of the FLSA as to the Representative Plaintiff Simone and the FLSA Collective;

7.      That the Court declare, adjudge and decree that Defendants willfully violated their legal duties to pay overtime compensation as required under the NYLL as to the Representative Plaintiff Simone and the New York Class;

8.      That the Court declare, adjudge and decree that Representative Plaintiff Simone and the FLSA Collective Members were at all times relevant hereto, and are, entitled to be paid overtime for work beyond 40 hours in a week remuneration for unlawful deductions; and that the amounts to which Representative Plaintiff Simone, the FLSA Collective and the New York Class are entitled is to be doubled as liquidated damages and awarded thereto;

9.      That the Court make an award to the Representative Plaintiffs, the FLSA Class and the New York Class of damages and/or restitution for the amount of unpaid compensation, unpaid overtime compensation, including interest thereon, and statutory penalties in an amount to be proven at trial;

10.     That the Court make an award to Simone and the New York Class of reimbursement for all unlawful deductions;

11.     For all other Orders, findings and determinations identified and sought in this Complaint;

12.     For pre-judgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate, under the NYLL and CPLR;

13.     For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law;

14.     Declaring that Defendants violated the notices and record keeping provisions of NYLL and WTPA;

15.     An award of statutory damages for Defendants' failure to provide accurate wage statements pursuant to NYLL § 198(1-d);

16.     An award of statutory damages for Defendants' failure to provide proper and/or accurate wage notices pursuant to NYLL § 198(1-b);

17.     A permanent injunction requiring Defendants to pay all statutorily required wages pursuant to the FLSA and NYLL; and

18.     Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated: November 30, 2019                    **RAPAPORT LAW FIRM, PLLC**

                                    By:                /s/
                                        _____
                                        Marc A. Rapaport, Esq.
                                        One Penn Plaza
                                        250 West 34th Street, Suite 2430
                                        New York, NY 10119
                                        Ph: (212) 382-1600
                                        mrapaport@rapaportlaw.com

MILLER LAW FIRM, PLLC

By:

/s/
Meredith R. Miller, Esq.
167 Madison Avenue, Suite 503
New York, NY  10016
(347) 878-2587
meredith@millerlaw.nyc

*Attorneys for Plaintiffs Blanca Martinez, Juan Carlos Simone, and the Plaintiff Collective and Class*