Rapaport Law Firm, PLLC | Attorneys at Law | One Penn Plaza | Suite 2430 | New York, NY 10119 | Tel 212.382.1600 | Fax 212.382.0920 | www.rapaportlaw.com

**Rapaport Law Firm**

Marc A. Rapaport*
Tel (212) 382-1600
Fax (212) 382-0920
mrapaport@rapaportlaw.com

*Member NY & NJ Bars

December 24, 2020

**VIA ECF**
The Honorable Roanne L. Mann
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      **Re:    Blanca Martinez and Juan Carlos Simone v. Barberry Rose Management Company, Inc. et al.
              Case No. 19-cv-06744 KAM-RLM**

Dear Magistrate Judge Mann:

      Together with Miller Law PLLC ("MLP"), we represent Plaintiffs, Blanca Martinez ("Martinez") and Juan Carlos Simone ("Simone") (collectively, "Plaintiffs"), in the above-referenced matter, which involves claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (FLSA) and New York Labor Law (NYLL) for wage and hour violations. Plaintiffs write jointly with Defendants to request that the Court approve the settlement agreement (the "Agreement") reached by the parties herein as a fair and reasonable resolution of this matter. The parties participated in a court-referred mediation with Robin Gise, Esq., a mediator with extensive experience in wage and hour matters. After a mediation that lasted nearly a full day, and, thereafter, telephone negotiations that continued for more than a month, the parties reached an amicable resolution of the claims set forth in the Plaintiffs' complaint (the "Complaint"). Thereafter, the parties drafted a formal settlement agreement, a fully executed copy of which is annexed hereto as Exhibit 1. Plaintiffs' counsel further requests that the Court approve our attorneys' fees and costs.

      The Agreement reflects a desire by the parties to fully and finally settle Plaintiffs' FLSA and NYLL claims. In addition, the Agreement resolves issues relating to the apartment (the "Apartment") located at 826 Crown Street, Brooklyn, New York 11213 (the "Building"). As set forth below, Plaintiffs resided in the Apartment in connection with their employment with Defendants, and continued to occupy the Apartment after their employment ceased. Regarding the Apartment, this Agreement provides for a date certain by which Plaintiffs will surrender the Apartment, and Defendants waive their monetary claims for use and occupancy/rent.

Under the Agreement, Plaintiffs are entitled to live in the Apartment rent free for six months after the date of the Agreement. Martinez plans to live in the Apartment until the expiration of the six-month period. The issues relating to the Apartment were significant for all parties, both monetarily and otherwise. Defendants took the position that they were entitled to payment of use and occupancy (or at least a credit for use and occupancy/rent) for the entire period during which Plaintiffs have continued to occupy (and will continue to occupy) the Apartment after Defendants terminated Plaintiffs' employment on November 1, 2019. Through the date of this letter, this amounts to nearly 14 months during which Plaintiffs have already occupied the Apartment rent-free. Under the Agreement, Plaintiffs are entitled to continue residing in the Apartment for a further six-month period, without paying any rent and/or use and occupancy. All told, this amounts to 20 months of free occupancy. In the most conservative analysis, Plaintiffs place a value of at least $40,000.00 on Plaintiffs' rent-free occupancy of the Apartment. These Apartment-related issues were extensively negotiated.

I.  **Introduction.**

As Plaintiffs' claims arise, in part, under the FLSA, the Agreement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the produce of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336, (S.D.N.Y. 2012) (citations and quotation marks omitted).

II. **Summary of Plaintiffs' Factual Allegations.**

Martinez worked as a porter/assistant at the Building from approximately 2002 until November 1, 2019. Simone served as the Building's Superintendent from approximately 1997 until November 1, 2019. The Complaint alleges that Plaintiffs became Defendants' employees upon Defendants' purchase of the Building on June 22, 2018, and their damage claims begin with this purchase date. Therefore, both Plaintiffs' claims relate solely to the approximately 71-week period from June 22, 2018 to November 1, 2019. The Building is six floors and has 47 rental apartments. In connection with their jobs, Plaintiffs were provided with the Apartment in the Building's basement, which they shared. The Complaint alleges that Defendants did not maintain accurate records of the hours that Plaintiffs worked during any particular day or week.

The Complaint alleges that Martinez worked an average of 30 hours per week. Compl. (Dkt. No. 1) ¶ 32. Thereafter, during the process of pre-mediation discovery, and after extensive discussions with Plaintiffs, we revised our estimate of the number of hours that Martinez generally worked per week. For the purposes of mediation, we calculated Martinez top-line (best case scenario) damages based on our revised estimate that Martinez worked an average of

approximately 15 hours per week. Although Plaintiffs maintain that Defendants knew and/or should have known that Martinez was involved in maintaining the Building, she was paid no monetary compensation for her work.

The Complaint alleges that Simone, as superintendent, who was on-call seven days per week, worked an average of 59 hours per week. Compl. ¶ 114. This estimate does not include time that Simone spent on-call and/or responding to emergencies. Simone's job duties extended far beyond day-to-day maintenance. Among other major projects, Simone maintains that he renovated bathrooms and kitchens, handled substantial plumbing projects, and replaced wood floors. We allege that Simone's flat weekly pay of $500.00 covered only the first forty (40) hours of work each week.

All estimates of hours worked are based on Plaintiffs' recollections, as there were no accurate written time records.

### III. **Plaintiffs' Top-Line Damage Calculations.**

#### A. General Assumptions Underlying Plaintiffs' Damage Calculations.

*Martinez:*

Our top-line damage calculations assume that Martinez worked 15 hours per week (every week) during the six-year limitations period. Because she received no pay, her damage estimates were derived by calculating multiplying her weekly work hours (15) by the New York minimum wage rate in effect during the respective pay period.

*Simone:*

The bulk of Simone's damages are based on Defendants' failure to pay him premium overtime compensation (at 1.5 times his regular rate of pay) for all hours of work above forty per week. Simone maintains that throughout his employment, Defendants failed to keep track of his hours of work, and Defendants did not provide Plaintiff with any means of accurately reporting his overtime hours. He largely received the same amount of pay each week, regardless of the number of hours that he worked or amount of his overtime hours during any particular workweek.

Simone's top-line (best case scenario) damage estimates were calculated on the basis of the rebuttable presumption in the Second Circuit that a fixed salary covers 40 hours. *See, e.g., Perez v. Platinum Plaza 400 Cleaners, Inc.,* No. 12-cv-9353, 2015 U.S. Dist. LEXIS 54066, *6-7 (S.D.N.Y. Apr. 24, 2015); *Keun-Jae Moon v. Gab Kwon,* 248 F. Supp. 2d 201, 207 (S.D.N.Y. 2002); *Giles v. City of New York,* 41 F. Supp. 2d 308, 316-217 (S.D.N.Y. 1999).

*No Lodging Credit:*

Although Plaintiffs were provided with the Apartment at the Building, Plaintiffs allege that Defendants cannot credit the value of the Apartment against wages because, *inter alia*, the Apartment was provided primarily for Defendants' benefit so that Plaintiffs were readily available to address emergent issues at the Building. The issue of Plaintiffs' claims for post-employment use and occupancy/rent was extensively negotiated.

### B. Calculations for Unpaid Minimum and Overtime Wages.

Year-by-year charts summarizing Plaintiffs' respective damage calculations are attached hereto as Schedule A.

As reflected in Schedule A, the calculation of Martinez' potential damages was straightforward. We multiplied the estimated number of hours she worked by the applicable minimum wage rate. These calculations assume that Martinez could establish that she worked all of the hours alleged, every week of the year, and excludes liquidated damages and prejudgment interest.

As reflected in Simone's attached chart, the bulk of his damages are for unpaid overtime compensation. His flat weekly pay was $500.00 per week.[1] In both 2018 and 2019, New York's minimum wage rate exceeded Simone's effective hourly rate of pay. For this reason, Simone's damage calculations include amounts owed for minimum wages under the NYLL. These calculations assume that Simone was not exempt under New York's "janitor exemption." If he were deemed exempt, his damages would be lower because of the FLSA's lower minimum wage rate.

### C. Alleged Damages Relating to Wage Statements/Notices.

*Wage Statement Violations:*

Defendants failed to provide Plaintiffs with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3). Pursuant to NYLL § 198(1-d), Plaintiffs are each entitled to statutory damages of $250.00 per workweek, up to a cap of $5,000.00.

---

[1] As discussed below, Defendants assert that Simone is exempt from hourly and overtime wage requirements under the NYLL's "janitor exemption." If Defendants were to prevail on this issue, Simone's damages would be lower. He would not have a claim for unpaid minimum wages, and his overtime rates would be based on the lower, FLSA hourly rate. Plaintiffs take the position that the janitor exemption does not apply to Simone for multiple reasons, including Defendants' failure to pay Simone on a per-unit basis, and their failure to issue notices informing him that he was deemed exempt.

*Wage Notice Violations:*

In violation of NYLL § 191, Defendants failed to furnish Plaintiffs, at the time of hiring or whenever there was a change to their rates of pay, with wage notices required by NYLL § 191. Due to Defendants' violation of NYLL § 195(1), Plaintiffs are entitled to recover from Defendants liquidated damages of $50.00 per work day, up to $5,000.00.

### D. Defendants' Defenses/Allegations:

Defendants maintain that Plaintiffs overstate their claimed hours worked throughout their employment and that they were paid for all the hours worked. Based on the size of the Building and the Building's use of outside contractors for certain repair work, Plaintiffs could not have worked anywhere near the hours that they claim. Defendants deny wage violations but contend that any such violations would not warrant liquidated damages because they believed in good faith that they were in compliance with the law.

Defendants have also argued that Simone's overtime claims are precluded by the NYLL exemption pursuant to 12 NYCRR Part 141-3.4 (commonly known as the "janitor exemption"). The janitor exemption allows employers to designate one person as a residential building's "janitor," whose rate of pay is based on the number of units. If the employer does so, the designated janitor is exempt from overtime requirements under the NYLL.

With respect to wage notices and statements, Defendants contend as an affirmative defense that Plaintiffs are not entitled to such statutory damages since Plaintiffs were paid all compensation they were entitled to pursuant to law, and Martinez did not have the status of Defendants' employee, because Defendants neither employed her or suffered her to work.

### IV. The Agreement is Fair and Reasonable.

The parties represent to the Court that the settlement between the parties is a fair and reasonable resolution of a *bona fide* dispute reached as a result of a mediation session with an experienced mediator, and extensive telephonic negotiations that were also overseen by the mediator. In sum, the Agreement is the product of extensive and challenging negotiations. As reflected in the attached Agreement, the parties have agreed to settle the case as follows: (a) Payments to Plaintiffs (inclusive of legal fees and costs) totaling $79,000.00; and (b) Defendants' waiver of all rent/use and occupancy for the 20-month period of Plaintiffs' post-employment occupancy of the Apartment (i.e., from December 1, 2019 to the agreed-upon surrender date, June 2021), a benefit that is conservatively valued at approximately $40,000.00.

After attorneys' fees and costs, Plaintiffs receive payments of $49,010.00, of which $35,250.00 is allocated to Simone, and $13,760.00 is allocated to Martinez. This allocation/division of damages was agreed upon between Plaintiffs themselves, and roughly corresponds to their respective damage estimates set forth in Schedule A. Plaintiffs' counsel

believes that this apportion is fair because: (a) based on our top-line damage calculations, Simone's potential damages are more than double Martinez' potential damages; (b) Martinez would face a unique challenge in establishing both liability and damages because Defendants assert they were unaware that she assisted Simone in his duties; and (c) only Martinez plans to occupy the Apartment full-time during the six-month period following the Agreement's execution, and thus this aspect of the settlement (waiving rent for future occupancy) particularly benefits Simone.

Plaintiffs were present at the mediation, and they were fully able to (and did) participate in the negotiations with the assistance of a licensed interpreter.

Plaintiffs' counsel is seeking $29,990.00 in combined disbursements and legal fees ($3,503.82 for disbursements, and $26,486.18 in legal fees). This represents a contingent legal fee of 23% of the net value of settlement, which is conservatively estimated to be $115,496.18. This net value of the settlement is based on: (a) monetary payments of $79,000; plus (b) the estimated value of 20 months' rent-free occupancy of the Apartment ($40,000.00); (c) minus disbursements of $3,503.82 = $115,496.18.

The amount of legal fees requested (which is divided equally between RLF and MLP) is significantly less than the 33.3% contingency fee provided by Plaintiffs' attorneys' retainer agreement with Plaintiffs (Exhibit 2). Rapaport Law Firm ("RLF") requests reimbursement for costs/disbursements in the amount $3,503.82, which is largely attributable to filing fees, interpretation services at the mediation, service of process and the mediator's fees. All of these expenses were necessary for the prosecution of Plaintiffs' claims.

We believe that the Settlement Amount is fair and reasonable in light of the uncertainties associated with establishing Plaintiffs' precise amount of number of hours worked. *See Beckert v. Rubinov*, 15 Civ. 1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(finding that the "amount [plaintiff] would receive under the Agreement ($29,557.97) is a substantial proportion of the maximum possible recovery he identifies ($114,700)").

The parties were able to reach an agreement before incurring the costs of depositions, motion practice and trial. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016)(citing the relatively early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated). Furthermore, here, as in *Burgos*, there is no assurance that Plaintiffs could be awarded liquidated damages under FLSA or NYLL if this matter were to proceed to trial.

### V. Plaintiffs' Counsels' Application for Attorneys' Fees.

Under both the FLSA and NYLL, Plaintiffs are entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his or her own compensation did not have an adverse impact on the extent of relief

counsel obtained for the client. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012).

Plaintiffs' counsel represents Plaintiffs on a contingent basis, pursuant to a retainer agreement (Ex. 2), which provides for attorneys' fees of one-third of the net recovery. The attorneys and staff of RLF and MLP spent substantial time spent on this matter, and the expenses that we reasonably incurred are set forth in the accurate, detailed and contemporaneous records of RLF and MLP, which are attached hereto as Exhibits 3 and 4, respectively. The lodestar in the attached billing records (Exs. 3, 4) exceeds the amount of fees requested.

Contingency fees of one-third are routinely approved in this Circuit. *Sierra v. Mid City Gym and Tanning LLC*, No. 16 Civ. 2892, 2017 WL 4862070 *4 (S.D.N.Y. Oct. 25, 2017); *Gaspar v. Personal Touch Moving, Inc.,* No. 13 Civ. 8187, 2015 WL 7871036 *2 (S.D.N.Y. Dec. 3, 2015).

The amount of legal fees requested is particularly reasonable because the monetary payments to Plaintiffs are just one component of the consideration they receive under the Agreement. As stated above, Defendants agreed to waive all use and occupancy/rent otherwise payable by Plaintiffs from the date Plaintiffs were terminated through six months after the execution of the Agreement. Thus, the amount of legal fees sought by Plaintiffs' counsel is substantially less than 33% of the true value of the Agreement to Plaintiffs.

The attorneys and staff at RLF and MLP who were involved in this case, and whose time is reflected in the attached billing records, are:

1. **<u>Marc Rapaport</u>**

I am the managing member of Rapaport Law Firm, which began as my solo practice in 1995. I have more than twenty years of experience litigating employment matters on behalf of employees in New York. I received a J.D. from Georgetown University Law Center in 1992. Thereafter, I worked as a Staff Attorney for the United States Department of Justice in Washington, D.C. I represent employees in a broad range of discrimination and wage/hour matters. I am an active member of the National Employment Lawyers Association and the National Employment Lawyers Association New York. I believe that my clients also benefit from my broader experience beyond the field of employment law, including my experience litigating commercial disputes in state and federal courts. I have more than 25 years handling residential landlord/tenant matters in New York City. This landlord/tenant experience was crucial to this case because issues relating to the Apartment were of significant importance to Plaintiffs, and they were extensively negotiated.

For more than 20 years, I have endeavored to represent immigrant workers who often find it difficult to obtain skilled legal representation. In recent years, I have particularly focused on representing immigrant workers (superintendents and porters) in the building service industry, which have included, by way of example, the following matters: <u>Armas et al. v. SKYC</u>

Management LLC et al., SDNY 2014 CV 6360 (PGG)(HBP); Castillo et al. v.140 Ash Associates, LLC, et al., EDNY 16-cv-5216 (FB)(PK); and Salas et al. v. Phoenix ACV Construction Services, LLC et al., SDNY 16-cv-08066. My requested hourly rate of $400.00 has been approved by multiple judges in the Second Circuit. *See, e.g., Montalvo v. Arkar, Inc.*, No. 17-cv-6693, 2018 U.S. Dist. LEXIS 79667 (S.D.N.Y. May 10, 2018).

2. **Meredith R. Miller (Miller Law, PLLC; of counsel to Rapaport Law Firm, PLLC)**

Meredith R. Miller has served as Of Counsel to Rapaport Law Firm for more than twelve years. She received a J.D. from Brooklyn Law School in 2000. Thereafter, she started her legal career in Albany, clerking for the New York Court of Appeals. She then served as a litigation associate at Proskauer Rose, LLP in New York City. In 2004, she accepted a teaching fellowship at Temple Law School in Philadelphia, which began her career as a law professor. Ms. Miller teaches contract, business and employment law at the Touro College, Jacob D. Fuchsberg Law Center in Long Island, New York. She has written and lectured extensively on these subjects. Additionally, she has served as co-counsel with Mr. Rapaport on over a dozen wage cases representing immigrant workers. Her requested hourly rate of $400.00 has been approved by multiple judges in the Second Circuit. *See, e.g., Montalvo v. Arkar, Inc.*, No. 17-cv-6693, 2018 U.S. Dist. LEXIS 79667 (S.D.N.Y. May 10, 2018).

3. **Karina Gulfo**

Ms. Gulfo has been a paralegal at Rapaport Law Firm since August 2018. Ms. Gulfo speaks fluent Spanish. Because of her language skills, Ms. Gulfo served a crucial and effective role in our firm's representation of Plaintiffs. Ms. Gulfo has performed FLSA damage calculations in multiple FLSA/NYLL cases since she joined Rapaport Law Firm. A substantial portion of Ms. Gulfo's responsibilities at Rapaport Law Firm involving client communications, damage calculations, and case management in FLSA matters. Ms. Gulfo also ensured that Plaintiffs had the software and knowledge required to participate in the remote mediation session.

4. **Joselin Orellana**

Ms. Orellana has been a legal intern and office assistant at Rapaport Law Firm since February 14, 2020. Ms. Orellana speaks fluent Spanish. Because of her language skills, Ms. Orellana plays a crucial and effective role in our firm's representation of immigrant workers. Ms. Orellana has been extensively involved in handling communications with our firm's wage and hour clients, as well calculating unpaid wage damages.

We respectfully request that the Court approve the Agreement, as well as the amount of legal fees requested herein. Should Your Honor have questions or concerns regarding this settlement, the parties are happy to discuss them.

        The parties thank the Court for its attention to this matter.

                                            Respectfully yours,

                                                      /s/

                                            Marc A. Rapaport

Encs.

cc:      All Counsel of Record (*Via ECF only*)

Honorable Roanne L. Mann
United States Magistrate Judge
December 24, 2020
Page 10

## SCHEDULE A.
## PLAINTIFFS' ANNUAL DAMAGES CHARTS

| **PLAINTFF: BLANCA MARTINEZ (based on 15 hours of work per week at NY minimum wage)** | | | |
|---|---|---|---|
| **Year** | **Minimum Wage Claim** | **Overtime Claim** | **Total** |
| 2018 (6/22/18 – 12/31/18 (28 weeks) | $13,520.00 | 0 | $9,360.00 |
| 2019 (1/1/19 – 11/1/19) | $12,900.00 | 0 | $10,530.00 |
| | | | *$19,890.00* |

| **PLAINTIFF: JUAN CARLOS SIMONE** | | | |
|---|---|---|---|
| **Year** | **Minimum Wage Claim** | **Overtime Claim** | **Total** |
| 2018 | $1,040.00 | $19,266.00 | $20,306.00 |
| 2019 | $3,900.00 | $16,672.50 | $20,572.50 |
| | | | *$40,878.50* |