UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BLANCA MARTINEZ and JUAN CARLOS
SIMONE, *individually, and on behalf of all others
similarly situated,*

                PLAINTIFFS,        Case 1:19-cv-06744

      VS.

BARBERRY ROSE MANAGEMENT COMPANY,
INC. D/B/A HOWAL MANAGEMENT CORP.,    (KAM) (RLM)
ARM MAINT INC., STF 826 CROWN STREET
HOLDING LLC, LJJ MANAGER II LLC, LJJ
MANAGER LLC, BSF INWOOD HOLDING LLC,
LEWIS BARBANEL, *and all related entities,*

                DEFENDANTS.
-----------------------------------------------------------------x

### NEGOTIATED SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

Plaintiffs Blanca Martinez ("Martinez") and Juan Carlos Simone ("Simone") (collectively "Plaintiffs") and Barberry Rose Management Company, Inc. Howal Management Corp., Arm Maint Inc., STF 826 Crown Street Holding LLC, LJJ Manager II LLC, LJJ Manager LLC, BSF Inwood Holding LLC, Lewis Barbanel (together the "Defendants" and together with Plaintiffs, the "Parties") desire to settle and resolve fully all claims that have been or could have been brought against Defendants by Plaintiffs and all claims that have been or could have been brought against Plaintiffs by Defendants, and, subject to the approval of the Court pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015), the Parties have reached a compromise settlement agreement to dispose of all such claims, including but not limited to, Plaintiffs' claims against Defendants in the lawsuit captioned *Blanca Martinez, et al. v. Barberry Rose Management Company, Inc., et al.*, Case No. 1:19-cv-06744 (KAM) (RLM), pending in the United States District Court for the Southern District of New York (the "Lawsuit"), Therefore, in consideration of the foregoing, Plaintiffs and Defendants agree as follows:

    1. **Consideration.** Defendants agree to provide Plaintiffs with the total settlement sum of Seventy Nine Thousand Dollars ($79,000.00), without setoff, in consideration for and in full satisfaction of all claims Plaintiffs may have against Releasees (as defined below), known or unknown, asserted or unasserted, through the date of their execution of the Agreement. Such payments shall be allocated as follows:

        1.1   PAYMENTS TO BLANCA MARTINEZ:

            (a) Within twenty (20) days of the Court's Order approving this Agreement, Defendants shall issue, or have issued on their behalf, a check made payable

- 1 -

to "Blanca Martinez" in the amount of $6,325.00, less applicable taxes and withholdings, which shall be reportable on an IRS Form W-2, and the foregoing taxes and withholdings shall be calculated in accordance with applicable IRS regulations;

(b) Within twenty (20) days of the Court's Order approving this Agreement, Defendants shall issue, or have issued on their behalf, a second check made payable to "Blanca Martinez": in the amount of $5,435.00, without deductions, withholdings and/or setoff, which shall be reportable on IRS Form 1099 (Box 3); and

(c) Within the time frame set forth in Paragraph 2.12 below, Defendants shall issue, or have issued on their behalf, a third check made payable to "Blanca Martinez": in the amount of $2,000.00, without deductions, withholdings and/or setoff, which shall be reportable on IRS Forms 1099 (Box 3).

The foregoing payments to Blanca Martinez shall be delivered to Miller Law, PLLC, 167 Madison Avenue, Suite 503, New York, New York 10016.

1.2   PAYMENTS TO CARLOS SIMONE:

(a) Within 20 days of the Court's Order approving this Agreement, Defendants shall issue, or have issued on their behalf, a check made payable to "Juan Carlos Simone": in the amount of $33,250.00, without deductions, withholdings and/or setoff, which shall be reportable on IRS Form 1099 (Box 3); and

(b) Within the time frame set forth in Paragraph 2.12 below, Defendants shall issue, or have issued on their behalf, a third check made payable to "Juan Carlos Simone" in the amount of $2,000.00, without deductions, withholdings and/or setoff, which shall be reportable on IRS Form 1099 (Box 3);

1.3   PAYMENTS TO PLAINTIFFS' COUNSEL FOR COURT-APPROVED LEGAL FEES AND DISBURSEMENTS:

Defendants shall issue, or have issued on their behalf, shall issue checks made payable to:

(a) Rapaport Law Firm, PLLC ("RLF"), as and for RLF's legal fees and disbursements, in the sum of Sixteen Thousand Seven Hundred Forty-Six Dollars and Ninety-One Cents ($16,746.91), to be delivered to Marc A. Rapaport, 91 Seven Hills Lake Drive, Carmel, New York 10512, or to such other address as RLF may provide to Defendants' counsel in writing, which shall be reportable on an IRS Form 1099 (Box 3); and

(b) Miller Law, PLLC ("MLP"), as and for MLP's legal fees and disbursements, in the sum of Thirteen Thousand Two Hundred Forty-Three Dollars and Five Cents ($13,243.05), to be delivered to Miller Law, PLLC, 167 Madison Avenue, Suite 503, New York, New York 10016, or to such other address as MLP may provide to Defendants' counsel in writing, which shall be reportable on an IRS Form 1099 (Box 3);

1.4 ADDITIONAL CONSIDERATION. In addition to the foregoing, as additional consideration to Plaintiffs, subject to the other terms and conditions set forth in this Agreement, Defendants waive claims for use and occupancy and/or rent in connection with Plaintiffs' continued use of the apartment located at 826 Crown Street, Basement Apartment, Brooklyn, New York (the "Apartment") during the time period set forth in Article 2 below.

1.5 Plaintiffs and Plaintiffs' counsel shall provide Defendants with duly executed IRS Forms W 9 as a condition of the payments identified above being made.

1.6 **Notice of Default and Right to Cure.** In the event that any payment due as set forth in this Agreement is not received by the close of business on the final date set forth herein for such payment, or, provided that the payment date falls on a weekend or holiday, before the close of business on the next following business day, Plaintiffs' counsel shall serve a written notice ("Notice of Default") upon counsel for the Defendants, Daniel W. Morris via email at dwmorris@cbdm.com with a copy to Stephen P. Pischl at sppischl@cbdm.com, and Defendants shall have ten business days from receipt of same to cure the default by making such payment. In the event that Defendants do not cure their default within said ten-business day period, Plaintiffs shall be entitled to enter Judgment for the entire amount due and owing, with interest to commence as of the date of Default at a rate of 10% per annum on the balance due, for which Defendants shall be jointly and severally responsible. The Court shall retain jurisdiction for the purposes of enforcing this Agreement, including the issuance of a judgment in the event of a default in payment by Defendants.

1.7 **Indemnification.** Plaintiffs shall be solely responsible for the payment of all local, state and federal taxes, interest, penalties and other liabilities or costs that may be assessed in connection with the settlement sum set forth in paragraph "1" and its subparts above. Plaintiffs further agree to indemnify and hold Defendants harmless against the payment of any such taxes, interest, penalties and other liabilities or costs that may be assessed by the Internal Revenue Service, or any other taxing authority and/or any other governmental agency (whether federal, state, or local), in connection with such settlement sum, including but not limited to any failure by Plaintiffs to report to the proper taxing authorities, or any failure by Plaintiffs to pay income taxes on, the payments described in this paragraph "1" and its subparts above, and/or any prior payment received from Defendants,

provided that Defendants, and not Plaintiffs, are responsible for any tax liabilities, payments, costs, interest and penalties concerning the employer's portion of any tax withholding obligations. Plaintiffs acknowledge that they have not relied on any oral or other representations made by Defendants or their counsel regarding the tax consequences of any of the amounts paid pursuant to this Agreement. Plaintiffs further acknowledge and agree that neither Defendants nor counsel for Defendants, have provided any advice whatsoever on the taxability of the foregoing settlement payments to Plaintiffs.

2. **Plaintiffs' Surrender of the Apartment at 826 Crown Street, Brooklyn, New York.** Plaintiffs acknowledge as follows:

2.1 Currently, Martinez resides full time at the Apartment, and Simone spends time at the Apartment on weekends.

2.2 Plaintiffs may continue to live in and possess the Apartment, without being charged rent or usage fees, until the later of: (a) the date six months after Defendants' counsel receive an executed copy of this Agreement; or (b) sixty days after Defendants deliver the full amounts of the payments provided for in subparagraphs 1.1 through 1.5 hereinabove (the "Surrender Date").

2.3 Provided that Defendants have made the payments set forth in paragraphs 1.1 (a) and (b), 1.2(a) and 1.3 (a) and (b) hereinabove, on or before the Surrender Date as defined in the preceding paragraph, Plaintiffs shall surrender vacant possession of the Apartment to STF 826 Crown Street Holding LLC, in reasonably "broom clean" condition and free of all tenants, occupants and debris, time being of the essence, and give notice to STF 826 Crown Street Holding LLC, which may be via email from Plaintiffs' counsel to Defendants' counsel, that they have done so. Plaintiffs shall also remove from the Apartment and from 826 Crown Street all personal property belonging to Plaintiffs or to any other tenants or occupants of the Apartment on or before the Surrender Date.

2.4 Plaintiffs acknowledge that any personal property remaining in the Apartment after the Surrender Date will be deemed abandoned.

2.5 Plaintiffs shall not remove any fixtures or appliances from the Property, including, without limitation, counters, refrigerators, sinks, floors, toilets, tubs, showers, and cabinets, to the extent such fixtures and/or appliances are presently in the Property.

2.6 Nothing contained in this Agreement shall permit or entitle Plaintiffs or any other tenants or occupants of the Apartment to remain in the Apartment beyond the Surrender Date.

2.7  While Plaintiffs continue in possession of the Apartment as set forth in this Agreement, upon reasonable notice by Defendants to Plaintiffs' counsel, Plaintiffs will allow STF 826 Crown Street Holding LLC and its agents access to the Apartment to assess the condition, to plan for repairs and for other operational reasons, including, for example, to show the Apartment to prospective employees.

2.8  Plaintiffs acknowledge and represent that they have filed no mechanic's lien with respect to any work performed for any of the Defendants, that they have no basis to file such lien(s) and they shall not file any such lien(s).

2.9  Plaintiffs acknowledge and agree that STF 826 Crown Street Holding LLC may bring an eviction proceeding against Plaintiffs in New York City Housing Court based upon the terms of this Agreement, as set forth herein, with notice to also be provided to Plaintiffs' counsel.

2.10 Provided that Defendants have made all of the payments set forth in paragraphs 1.1 (a) and (b), 1.2(a), and 1.3 (a) and (b) hereinabove, in any eviction proceeding brought pursuant to this Agreement, Plaintiffs agree to accept service of the notice and petition, and further agree to waive any and all defenses and claims they may have to interpose Provided, however, that Defendants shall not file an eviction proceeding: (a) unless Defendants have delivered all of the payments provided for in paragraphs 1.1 (a) and (b), 1.2(a), and 1.3 (a) and (b) hereinabove; and (b) unless Plaintiffs continue to occupy the Apartment after the passage of the Surrender Date.

2.11 In any eviction proceeding brought pursuant to this Agreement, Plaintiffs agree that they will enter into a stipulation that provides for a judgment of possession, with a warrant of eviction to issue forthwith.

2.12 In consideration for Plaintiffs' surrendering vacant possession of the Apartment as set forth herein, and provided that Plaintiffs have fulfilled all of the promises contained in paragraphs 2.1 to 2.11 and their subparts herein, Defendants shall issue, or have issued on their behalf, the checks described in paragraphs 1.1(c) and 1.2(b) above, which will be sent to Miller Law, PLLC, 167 Madison Avenue, Suite 503, New York, New York 10016, within seven days of Plaintiffs surrendering vacant possession of the Apartment to STF 826 Crown Street Holding LLC, and giving notice to STF 826 Crown Street Holding LLC that they have done so, which notice may consist of an email by Plaintiffs' counsel to Defendants' counsel.

3. **General Release of All Claims by Plaintiffs.**

   3.1  Plaintiffs, their heirs, executors, administrators, successors and assigns voluntarily release and forever discharge Defendants, and their respective direct and indirect

parent companies and their subsidiaries, divisions, current and former owners, equity holders, officers, directors, principals, shareholders, trustees, administrators, executors, agents, attorneys, employees, former employees, insurers, reinsurers, predecessors, successors and assigns, and their employee benefit plans and programs and their administrators and fiduciaries (collectively the "Releasees") of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which they may have against Releasees as of the date of execution of this Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: the Fair Labor Standards Act, 29 U.SC. § 201 et seq.; the New York Minimum Wage Law and all wage orders; the New York Wage and Wage Payment laws, including Sections 190 et seq. of the Labor Law; Article 6 of the New York Labor Law; any other federal, state, city or local human rights, civil rights, wage-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any public policy, contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, unpaid overtime, failure to issue proper wage statements and/or wage notices, employment discrimination, retaliation, wrongful termination, constructive discharge, breach of contract, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring from the beginning of time up to and including the date of Plaintiffs' execution of this Agreement.

3.2 The release and waiver of claims as against the Releasees described in Subpart 3.1 of this paragraph 4 extends only to persons or entities acting on behalf of or in privity with Defendants themselves, and as to such persons or entities must be limited to claims arising from actions taken in their capacity as such.

3.3 Plaintiffs are not waiving the right to vested benefits under the written terms of any pension or welfare benefit plan, if any, claims for unemployment or workers' compensation benefits, any medical claim or any judgment or monetary awards or settlements that may arise related to medical benefits under any benefit plan sponsored by Defendants, claims arising after the date on which Plaintiffs sign this Agreement, or claims that are not otherwise waivable under applicable law.

3.4 Provided that this Agreement is approved by the Court, Plaintiffs agree that they will sign and return the Stipulation and Order of Final Dismissal with Prejudice (attached to this Agreement as Exhibit "A") to Defendants' Counsel within five business days.

JCS

3.5 Plaintiffs are unaware of any other lawsuit involving Plaintiffs and Defendants. In the event that there are any such claims or proceedings, Plaintiffs shall take reasonable measures to withdraw and/or discontinue any other complaint, lawsuit, action, cause of action, administrative charge, claim, controversy, demand, grievance or proceeding (unless such proceeding is a class action in which case Plaintiffs agree to "opt out" of the class and not to participate in the class action) against the Releasees. In the event that, for any reason, any complaint, lawsuit, action, cause of action, administrative charge, claim, controversy, demand, grievance or proceeding covered by this paragraph 3.5 is or remains pending or is instituted on their behalf, Plaintiffs agree: (i) to ask each agency or court with which any such matter is instituted and/or pending to enter an order, without appearance by either party, fully and finally withdrawing the matter and dismissing it with prejudice, and any such orders shall be attached to and become a part of this Agreement; (ii) to not, unless required by law to do so (and then subject to the terms of this paragraph), participate or request others to participate on their behalf in any such proceeding or litigation arising therefrom or associated therewith; and (iii) in no event, from any such source or proceeding whatsoever, to seek or in any way to obtain or accept any monetary award, recovery, settlement or relief therefrom. Provided, however, that nothing set forth in this article and/or otherwise in this Agreement shall in any way limit, restrict, impair or otherwise restrict Plaintiffs from enforcing this Agreement, including, but not limited to, filing court and/or other legal proceedings to enforce Defendants' payment obligations set forth hereinabove.

4. **General Release of All Claims by Defendants.** In consideration for Plaintiffs' timely signing this Agreement and complying with the promises made by Plaintiffs contained in this Agreement, including the releases and waivers of claims, to which Defendants are not otherwise entitled, to the greatest extent permitted under applicable law, Defendants knowingly and voluntarily release and forever discharge Plaintiffs of and from any and all claims, debts, obligations or liability whatsoever, whether arising in law or equity, whether known or unknown, that they have or may have against Plaintiffs, as of the date of execution of this Agreement, including release of all rent and claims in connection with the apartment or apartments Plaintiffs reside in or resided in during their employment with any of the Defendants.

5. **Limitations on the Parties' General Releases.** Nothing in this Agreement restricts or prohibits anyone from (i) complying with a lawful subpoena or other legal process, or (ii) initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board, the Department of Justice, the Securities and Exchange Commission, the Congress, and any agency Inspector General (collectively, the "Regulators"), or from making other disclosures that are protected

under the whistleblower provisions of state or federal law or regulation. However, to the maximum extent permitted by law, Plaintiffs are waiving their rights to receive any individual monetary relief from the Releasees resulting from such claims or conduct, regardless of whether Plaintiffs or another party have filed them, and in the event either of the Plaintiffs obtains such monetary relief, the Releasees will be entitled to an offset for the payments made to said Plaintiff pursuant to this Agreement. This Agreement does not limit Plaintiffs' rights to receive an award from any Regulator that provides awards for providing information relating to a potential violation of law.

6. **Acknowledgments and Affirmations.**

   6.1 Plaintiffs affirm that in the Lawsuit they have asserted a claim seeking unpaid wage or overtime pay under the Fair Labor Standards Act, the New York State Labor Law, and/or any other law, regulation or basis, and affirm that there is a bona fide dispute as to such FLSA claims which are being settled and released by this Agreement. Plaintiffs believe that this Agreement is fair and reasonable, and authorize their attorneys to seek from the Court approval of the settlement as fair and reasonable under the FLSA, and dismissal of the Lawsuit with prejudice; and Defendants acknowledge and affirm that they shall reasonably cooperate with obtaining approval of this Agreement pursuant to subject to the approval of the Court pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015).

   6.2 The payments provided for above are in full discharge of any and all of Defendants' alleged liabilities, damages and obligations to Plaintiffs, including, but not limited to the claims asserted in the Lawsuit;

   6.3 Except as to any amounts which might be vested and come due under employee benefit plans governed by ERISA or non-qualified deferred compensation, or under the terms of any insurance policies, if any, which may remain in effect for Plaintiffs, Defendants do not owe Plaintiffs any further compensation, overtime compensation, bonus, incentive compensation, accrued vacation pay or monies of any kind; and

   6.4 The payments provided for above fully and completely settle all claims by Plaintiffs and Plaintiffs' counsel against Releasees for attorneys' fees, costs, disbursements and the like, except in the event of a default by Defendants, in which instance Plaintiffs' counsel shall be entitled to recover from Defendants reasonable attorneys' fees incurred in connection with enforcing this Agreement.

   6.5 All Parties represent and acknowledge that they discussed all material aspects of this Agreement with their respective counsel, have been fully advised by their counsel as to their rights, understand that they are waiving significant legal rights

- 8 -

by signing this Agreement, and enter into this Agreement voluntarily, with the full understanding of the Agreement and all of its terms.

7. **Procedure.** After this Agreement and the Stipulation and Order of Final Dismissal with Prejudice of Plaintiffs' Claims ("Stipulation") attached as Exhibit "A" are fully-executed by the Parties and their counsel, subject to Defendants' review of and consent to the motion for judicial approval of the settlement, Plaintiffs on behalf of the Parties will submit the Agreement and Stipulation to the Court for the Court's consideration and approval. The Court's approval of all provisions of this Agreement is a material term of this Agreement, and if the Court declines to approve this Agreement, the Agreement shall be null and void, and the parties shall be returned to their positions as if this Agreement did not exist, except that they shall operate in good faith to resolve any deficiencies with this Agreement identified by the Court in any decision or opinion declining to approve this Agreement before the Agreement shall be null and void..

8. **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the state of New York without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, any party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Provided that this Agreement is approved by the Court pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015), should any provision of this Agreement thereafter be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the release language and Defendants' payment obligations, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

9. **No Admission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

10. **Amendment.** This Agreement may not be modified, altered or changed except in writing and signed by all Parties wherein specific reference is made to this Agreement.

11. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Plaintiffs acknowledges that they have not relied on any representations, promises, or agreements of any kind made to them in connection with their decision to accept this Agreement, except for those set forth in this Agreement.

12. **Section Headings.** Section headings are used herein for convenience of reference only and shall not affect the meaning of any provision of this Agreement.

JCS

13. **Legal Fees.** Except as provided for in this Agreement, each party will be responsible for its own legal fees or costs, if any, incurred in connection with the negotiation, settlement and delivery of this Agreement.

14. **Counterparts.** This Agreement may be executed in counterparts with all counterparts constituting the entire Agreement and with the same full force and effect as if this Agreement were not executed in counterparts. Electronic and facsimile signatures shall be deemed as originals.

15. **Joint Participation in Preparation of Agreement.** The Parties participated jointly in the negotiation and preparation of this Agreement, and each party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement. Accordingly, it is agreed that no rule of construction shall apply against any party or in favor of any party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

16. **Review and Revocation Period for Release of Age-Discrimination Claims.** Plaintiffs hereby acknowledge that:

    16.1 Plaintiffs already have attained the age of 40 and understand that this is a full release of all existing claims, whether known or unknown, including, but not limited to, claims for age discrimination under the Age Discrimination in Employment Act.

    16.2 Plaintiffs have read and understand this Agreement and signed this Agreement voluntarily. They further acknowledge that they have been advised to consult with an attorney of their choice before signing this Agreement, in which they waive important rights, including those under the Age Discrimination in Employment Act.

    16.3 By executing this Agreement, Plaintiffs have been afforded at least 21 calendar days to consider the contents, meaning and effect of this Agreement, as well as alternatives to signing this Agreement, and did not sign the Agreement until after expiration of that 21-day period. They agrees that the 21-day consideration period began on the date this Agreement was first delivered to them and that the 21-day consideration period shall not be restarted and shall continue without interruption if the Defendants change any of the terms of the offer contained in this Agreement, whether or not the changes are material.

    16.4 Plaintiffs understand that the releases contained in this Agreement do not extend to any rights or claims that they have under the Age Discrimination in Employment Act that first arise after execution of this Agreement.

*JCS*

16.5 Plaintiffs understand that they may revoke this Agreement for a period of seven calendar days following the date they execute this Agreement. Any revocation during this period must be submitted in writing and must be delivered to Defendants, c/o Daniel W. Morris, Clifton Budd & DeMaria, LLP, The Empire State Building, 350 Fifth Avenue, 61st Floor, New York, NY 10118, within 7 calendar days of Plaintiffs' execution of this Agreement. If the last day of the revocation period falls on a Sunday or legal holiday, then the revocation period shall not expire until the next day that is not a Sunday or legal holiday. The foregoing notwithstanding, this Agreement shall not become effective and enforceable until the seven-day revocation period has expired. Plaintiffs understand that seven calendar days after the date of execution of this Agreement, the Agreement shall become effective and, as of that date, Plaintiffs may not change their decision or seek any other remuneration in any form.

16.6 It is understood that, notwithstanding any other provision of this Agreement, the revocation of this Agreement by Plaintiffs is a proper basis for revocation of the Agreement by Defendants as the non-revoking party or parties.

16.7 The parties agree that this Agreement may be used as evidence only in a subsequent proceeding in which Defendants or Plaintiffs allege breach of this Agreement, challenge the validity of the Agreement, or seek interpretation of this Agreement

17. **Severability and Modification.** If any provision of this Agreement is declared illegal or unenforceable by this Court, Plaintiffs and Defendants agree that this Court has the full discretion to interpret or modify all such provisions to be enforceable and is directed to do so, provided that under no circumstance shall the amount payable by Defendants to Plaintiffs be reduced, delayed and/or otherwise impaired.

18. **Competency to Waive Claims.** At the time of considering or executing this Agreement, the Parties were not affected or impaired by illness, use of alcohol, drugs, or other substances or otherwise impaired. All Parties are competent to execute this Agreement.

19. Plaintiffs affirm that they have carefully read, or had translated to them verbatim in their primary language, the entirety of this Agreement and each fully understands all of the provisions contained it.

**PLEASE READ CAREFULLY. THIS AGREEMENT IS A LEGAL DOCUMENT AND INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS AS SET FORTH HEREIN, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL CLAIMS ARISING UNDER ALL FEDERAL, STATE, AND LOCAL LAWS.**

**BY SIGNING THIS AGREEMENT, PLAINTIFFS ACKNOWLEDGE AND AFFIRM THAT THEY ARE COMPETENT TO ENTER INTO THIS AGREEMENT, THAT**

THEY HAVE BEEN AFFORDED 21 DAYS TO REVIEW AND CONSIDER THIS AGREEMENT AND HAVE BEEN ADVISED TO DO SO WITH AN ATTORNEY OF THEIR CHOICE, THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE MADE TO THIS AGREEMENT DO NOT RESTART THE ORIGINAL 21-CALENDAR-DAY CONSIDERATION PERIOD, THAT THEY HAVE READ AND UNDERSTAND AND ACCEPT THAT SUBJECT TO THE TERMS AND CONDITIONS SET FORTH IN THIS AGREEMENT, THE RELEASE HEREIN WILL FULLY AND FINALLY WAIVE AND RELEASE ANY AND ALL CLAIMS, DEMANDS, DISPUTES AND ANY DIFFERENCES OF ANY KIND WHATSOEVER WHICH THEY MAY HAVE HAD OR NOW HAVE AGAINST THE DEFENDANTS AND/OR THE RELEASEES ARISING OUT OF OR RELATING TO THEIR EMPLOYMENT WITH THE DEFENDANTS, THAT NO REPRESENTATIONS, PROMISES OR INDUCEMENTS HAVE BEEN MADE TO ME EXCEPT AS SET FORTH IN THIS AGREEMENT, THAT THIS AGREEMENT IS WRITTEN IN A MANNER THAT IS UNDERSTANDABLE TO THEM, AND THAT THEY HAVE SIGNED THIS AGREEMENT FREELY AND VOLUNTARILY, INTENDING TO BE LEGALLY BOUND BY ITS TERMS, WITHOUT ANY DURESS OR COERCION, AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

DEFENDANTS ACKNOWLEDGE AND AFFIRM THAT THEY HAVE READ AND UNDERSTAND AND ACCEPT THAT, SUBJECT TO THE TERMS, CONDITIONS AND OBLIGATIONS SET FORTH IN THIS AGREEMENT, THEIR RELEASE HEREIN WILL FULLY AND FINALLY WAIVE AND RELEASE ANY AND ALL CLAIMS, DEMANDS, DISPUTES AND ANY DIFFERENCES OF ANY KIND WHATSOEVER WHICH THEY MAY HAVE HAD OR NOW HAVE AGAINST THE PLAINTIFFS, THAT NO REPRESENTATIONS, PROMISES OR INDUCEMENTS HAVE BEEN MADE TO ME EXCEPT AS SET FORTH IN THIS AGREEMENT, THAT THIS AGREEMENT IS WRITTEN IN A MANNER THAT IS UNDERSTANDABLE TO THEM, AND THAT THEY HAVE SIGNED THIS AGREEMENT FREELY AND VOLUNTARILY, INTENDING TO BE LEGALLY BOUND BY ITS TERMS, WITHOUT ANY DURESS OR COERCION, AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Negotiated Settlement Agreement and Mutual General Release as of the date set forth below:

Dated:  New York, New York       BLANCA MARTINEZ
        12-22 , 2020

        *Blanca Martinez* (signature)
        _____
        Blanca Martinez

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF New York     )

On December 22, 2020, before me personally appeared Blanca Martinez, known to me to be the individual whose name is subscribed therein, and executed the foregoing Negotiated Settlement Agreement and Mutual General Release, and duly acknowledged to me that they executed the same.

Marc A. Rapaport
Notary Public, State of New York
Re. No. 02RA5029413
Qualified in New York County
Commision Expires June 20, 2022

_____
Notary Public

Dated:  New York, New York       JUAN CARLOS SIMONE
        12 22, 2020

        _____
        Juan Carlos Simone

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF New York     )

On December 22, 2020, before me personally appeared Juan Carlos Simone, known to me to be the individual whose name is subscribed therein, and executed the foregoing Negotiated Settlement Agreement and Mutual General Release, and duly acknowledged to me that they executed the same.

Marc A. Rapaport
Notary Public, State of New York
Re. No. 02RA5029413
Qualified in New York County
Commision Expires June 20, 2022

_____
Notary Public

| | | |
|---|---|---|
| Dated: | New York, New York<br>_____, 2020 | BSF INWOOD HOLDING, LLC<br><br>By: _____<br>     Christopher Sciocchetti<br>     Chief Operating Officer |
| Dated: | New York, New York<br>_____, 2020 | BARBERRY ROSE MANAGEMENT COMPANY, INC.<br><br>By: _____ |
| Dated: | New York, New York<br>_____, 2020 | HOWAL MANAGEMENT CORP<br><br>By: _____ |
| Dated: | New York, New York<br>_____, 2020 | ARM MAINT INC.,<br><br>By: _____ |
| Dated: | New York, New York<br>_____, 2020 | STF 826 CROWN STREET HOLDING LLC<br><br>By: _____ |
| Dated: | New York, New York<br>_____, 2020 | LJJ MANAGER II LLC<br><br>By: _____ |
| Dated: | New York, New York<br>_____, 2020 | LJJ MANAGER LLC<br><br>By: _____ |
| Dated: | New York, New York<br>_____, 2020 | LEWIS BARBANEL<br><br>_____ |

| Dated: | New York, New York _____, 2020 | BSF INWOOD HOLDING, LLC<br><br>By: _____<br>Christopher Sciocchetti<br>Chief Operating Officer |
|---|---|---|
| Dated: | New York, New York _____, 2020 | BARBERRY ROSE MANAGEMENT COMPANY, INC.<br><br>By: _____ |
| Dated: | New York, New York _____, 2020 | HOWAL MANAGEMENT CORP<br><br>By: _____ |
| Dated: | New York, New York _____, 2020 | ARM MAINT INC.,<br><br>By: _____ |
| Dated: | New York, New York _____, 2020 | STF 826 CROWN STREET HOLDING LLC<br><br>By: _____ |
| Dated: | New York, New York _____, 2020 | LJJ MANAGER II LLC<br><br>By: _____ |
| Dated: | New York, New York _____, 2020 | LJJ MANAGER LLC<br><br>By: _____ |
| Dated: | New York, New York _____, 2020 | LEWIS BARBANEL<br><br>_____ |

| | | |
|---|---|---|
| Dated: | New York, New York _____, 2020 | BSF INWOOD HOLDING, LLC<br><br>By: _____<br>Christopher Sciocchetti<br>Chief Operating Officer |
| Dated: | New York, New York 12/24, 2020 | BARBERRY ROSE MANAGEMENT COMPANY, INC.<br><br>By: *[signature: Barbanel]* |
| Dated: | New York, New York 12/24, 2020 | HOWAL MANAGEMENT CORP<br><br>By: *[signature: Barbanel]* |
| Dated: | New York, New York 12/24, 2020 | ARM MAINT INC.,<br><br>By: *[signature: Barbanel]* |
| Dated: | New York, New York 12/24, 2020 | STF 826 CROWN STREET HOLDING LLC<br><br>By: *[signature: Barbanel]* |
| Dated: | New York, New York 12/24, 2020 | LJJ MANAGER II LLC<br><br>By: *[signature: Barbanel]* |
| Dated: | New York, New York 12/24, 2020 | LJJ MANAGER LLC<br>By: *[signature: Barbanel]* |
| Dated: | New York, New York 12/24, 2020 | LEWIS BARBANEL<br><br>*[signature: Barbanel]* |

- 14 -